1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN GILBERT,<br><br>        Plaintiff,<br><br>   v.<br><br>SHAHI ASSOCIATES, INCORPORATED, et al.,<br><br>        Defendants. | Case No.  1:21-cv-01375-DAD-SAB<br><br>ORDER VACATING MAY 18, 2022 HEARING<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT<br><br>(ECF No. 23)<br><br>**FOURTEEN DAY DEADLINE** |

Currently before the Court is Plaintiff Darren Gilbert's motion for default judgment, filed on April 1, 2022.  (ECF No. 23.)  No oppositions were filed and the deadline to do so has now expired.  Accordingly, the Court finds this matter suitable for decision without oral argument. See Local Rule 230(g).  Thus, the hearing set for May 18, 2022, will be vacated and the parties will not be required to appear at that time.  Having considered the moving papers, the declarations and exhibits attached thereto, supplemental briefing, as well as the Court's file, the Court issues the following findings and recommendations recommending Plaintiff's motion for default judgment be DENIED for inadequate service of the summons and complaint.

///

///

1

# I.

# BACKGROUND

### A.    Procedural History

On September 14, 2021, Plaintiff filed this action against Defendants Dalvinder S. Shahi, Kasmir K. Shahi, and Shahi Associates Incorporated.  (ECF No. 1.)  On December 8, 2021, however, Plaintiff filed a notice of voluntary dismissal as to Defendant Shahi Associates Incorporated, who was thereafter dismissed from the action.  (ECF Nos. 10, 14.)  That same day, Plaintiff filed a first amended complaint adding Defendant Nirmal Kaur dba Waterford Market.  (ECF No. 11.)

The proofs of service for Dalvinder Shahi and Kasmir Shahi indicate that Plaintiff served both Defendants with the summons and complaint by substituted service at 1351 Hartwick Ave., Turlock, California 95382 on September 29, 2021, by serving Defendants' co-occupant Randeep Shahi.[1]   (ECF Nos. 5, 6.)   Thereafter, Plaintiff served his first amended complaint on these Defendants by mail to the same address.  (ECF No. 12.)

As to Defendant Nirmal Kaur, the proof of service indicates Plaintiff served Kaur with the summons and first amended complaint by substituted service on December 17, 2021, by serving Harman Preet, a "coworker and person apparently in charge," at Waterford Market, 12828 Yosemite Boulevard, Waterford, California 95386.  (ECF No. 15.)

Defendants did not respond to the first amended complaint, and the Clerk of Court entered default against Dalvinder Shahi, Kasmir Shahi, and Nirmal Kaur on November 12, 2021. (ECF Nos. 16, 17, 18, 19.)

Plaintiff filed the instant motion against Defendants on April 1, 2022, seeking default judgment and injunctive relief.  (ECF No. 23.)  On April 5, 2022, the Court continued the hearing date, previously set for May 11, to May 18, 2022.  (ECF No. 24.)  Plaintiff was ordered to serve notice to all parties regarding the new hearing date, which was presumably done, although Plaintiff did not file any additional notice or proof of service with the Court.  (Id.)  As noted, no

---

[1] The Court additionally notes that, prior to the filing of the first amended complaint, the Shahi Defendants did not timely respond to the original complaint, and the Clerk of Court also entered default against them on November 12, 2021.  (ECF Nos. 7, 8.)

1   opposition to Plaintiff's motion has been filed.

2         **B.**    **Plaintiff's Allegations**

3         The amended complaint asserts claims for violations of the Americans with Disabilities

4   Act ("ADA"), California's Unruh Civil Rights Act (the "Unruh Act"), and California Health and

5   Safety Code §§ 19953 *et seq.* (denial of full and equal access to public facilities) against

6   Defendants, the purported owners/operators/leasers of the facility Waterford Market at 12828

7   Yosemite Boulevard, Waterford, California 95386.  (ECF No. 11 at 1–2, 4–8.)  Plaintiff alleges

8   Waterford Market is a store open to the public, intended for non-residential use, its operation

9   affects commerce, and it is a "public accommodation" as defined by 42 U.S.C. § 12181(7)(F).

10  (ECF No. 11 at 2; ECF No. 23-1 at 3.)

11        Plaintiff alleges he is substantially limited in his ability to walk, and must use a

12  wheelchair or prosthetic for mobility.  (ECF No. 11 at 2.)  Plaintiff lives less than twenty miles

13  from Waterford Market.  (ECF No. 11 at 2.)  He visited the facility on June 18, 2021, to purchase

14  refreshments.  (ECF No. 11 at 2.)  During the visit, Plaintiff alleges he encountered barriers that

15  interfered with and denied his ability to use and enjoy the goods, services, privileges, and

16  accommodations offered at the facility.  (ECF No. 11 at 2–3.)  More specifically, Plaintiff

17  identifies the following barriers:

18          a)  Plaintiff parked in the designated accessible parking space in
19              the Facility's parking lot.  He had difficulty walking to the
            Facility with his prosthetic leg, as the surface of the access aisle
20              next to his vehicle and path of travel to the Facility entrance
            was rough and uneven, with large cracks and height changes . . .
21              Accordingly, Defendants have failed to provide a level access
            aisle next to the designated accessible parking stall and an
22              accessible route of travel from the designated accessible parking
            to the Facility entrance, in violation of 1991 ADAAG §§ 4.6.3
23              and 4.3.8 (*see also* 2010 Standards §§ 502.4 and 303)[; and]

24          b)  There was an excessive slope in the floor in front of the
            transaction counter, which Plaintiff did not notice until he lost
25              his balance and almost fell . . . Accordingly, Defendants have
            failed to provide a proper clear floor space in front of the
26              transaction counter, in violation of 1991 ADAAG §§ 7.2 and
            4.2.4.3 (*see also* 2010 Standards §§ 904.4 and 305.2) . . .

27  (ECF No. 11 at 3; ECF No. 23-1 at 5.)  Plaintiff asserts the described barriers constitute

28  noncompliance with the 1991 ADA Accessibility Guidelines ("1991 Standards") and/or the 2010

ADA Standards for Accessible Design ("ADAAG"), as well as California Civil Code § 51 and Health and Safety Code §§ 19955(a) and 19959.  (ECF No. 11 at 4–8.)  Plaintiff further alleges Defendants knew or should have known of the barriers, and that they have the financial means to remove them but refuse to do so.  (ECF No. 11 at 3, 5.)  Plaintiff claims the obviousness of the barriers is sufficient to establish discriminatory intent.  (ECF No. 11 at 4.)

As a result of the aforementioned barriers, Plaintiff contends Waterford Market's goods, services, facilities, privileges, advantages, and accommodations were unavailable to him due to his disability and Plaintiff was and continues to be deterred from visiting Waterford Market. (ECF No. 11 at 3.)  Plaintiff seeks injunctive relief, statutory damages, and attorneys' fees and costs.  (ECF No. 11 at 8; ECF No. 23-1 at 2.)

## II.

## LEGAL STANDARD

"Our starting point is the general rule that default judgments are ordinarily disfavored," as "[c]ases should be decided upon their merits whenever reasonably possible."  NewGen, LLC v. Safe Cig, LLC, 840 F.3d 606, 616 (9th Cir. 2016) (quoting Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986)).  Pursuant to Federal Rule of Civil Procedure ("Rule") 55, obtaining a default judgment is a two-step process.  Entry of default is appropriate as to any party against whom a judgment for affirmative relief is sought that has failed to plead or otherwise defend as provided by the Federal Rules of Civil Procedure and where that fact is made to appear by affidavit or otherwise.  Fed. R. Civ. P. 55(a).  After entry of default, a plaintiff can seek entry of default judgment.  Fed. R. Civ. P. 55(b).  Rule 55(b)(2) provides the framework for the Court to enter a default judgment:

> (b) Entering a Default Judgment.
>
> > (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury

trial--when, to enter or effectuate judgment, it needs to:

>     (A) conduct an accounting;

>     (B) determine the amount of damages;

>     (C) establish the truth of any allegation by evidence; or

>     (D) investigate any other matter.

Fed. R. Civ. P. 55.

The decision to grant a motion for entry of default judgment is within the discretion of the court.  PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002); see also TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987) ("Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment.").  The Ninth Circuit has set forth the following seven factors (the "Eitel factors") that the Court may consider in exercising its discretion: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

Generally, once default has been entered, "the factual allegations of the complaint, except those relating to damages, will be taken as true."  Garamendi v. Henin, 683 F.3d 1069, 1080 (9th Cir. 2012) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)); see also Fed. R. Civ. P. 8(b)(6) ("An allegation — other than one relating to the amount of damages — is admitted if a responsive pleading is required and the allegation is not denied.").  Accordingly, the amount of damages must be proven at an evidentiary hearing or through other means.  Microsoft Corp. v. Nop, 549 F. Supp. 2d 1233, 1236 (E.D. Cal. 2008).  Additionally, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (internal citation omitted).  The relief sought must not be different in kind or exceed the amount that is demanded in the pleadings.  Fed. R. Civ. P. 54(c).

**III.**

**DISCUSSION**

The Court first determines whether the Court properly has jurisdiction in this matter, and then turns to the Eitel factors to determine whether default judgment should be entered.

**A.     Jurisdiction**

1.     Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to that granted by Congress.  U.S v. Sumner, 226 F.3d 1005, 1009 (9th Cir. 2000).  Pursuant to 28 U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States.'  "A case 'arises under' federal law either where federal law creates the cause of action or where the vindication of a right under state law necessarily turns on some construction of federal law." Republican Party of Guam v. Gutierrez, 277 F.3d 1086, 1088 (9th Cir. 2002) (internal punctuation omitted) (quoting Franchise Tax Bd. v. Constr. Laborers Vacation Tr., 463 U.S. 1, 8–9 (1983) (citations omitted)).  "[T]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  Republican Party of Guam, 277 F.3d at 1089 (citations omitted).

Plaintiff brings this action alleging violations of the ADA of 1990, 42 U.S.C. § 12101, *et seq*.  Therefore, the Court has original jurisdiction under 28 U.S.C. § 1331.  In addition, the Court has supplemental jurisdiction under 28 U.S.C. § 1367 for Plaintiff's related state law claims under the Unruh Act, California Civil Code §§ 51, *et seq.*, and Cal. Health & Safety Code §§ 19953, *et seq.*

2.     Service of Process on Defendants

As a general rule, the Court considers the adequacy of service of process before evaluating the merits of a motion for default judgment.  See J & J Sports Prods., Inc. v. Singh, No. 1:13-cv-1453-LJO-BAM, 2014 WL 1665014, at *2 (E.D. Cal. Apr. 23, 2014); Penpower Tech. Ltd. v. S.P.C. Tech., 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008); Mason v. Genisco Tech. Corp., 960

6

F.2d 849, 851 (9th Cir. 1992) (stating that if party "failed to serve [defendant] in the earlier action, the default judgment is void and has no res judicata effect in this action.").  Service of the summons and complaint is the procedure by which a court having venue and jurisdiction of the subject matter of the suit obtains jurisdiction over the person being served.  Miss. Publ'g Corp. v. Murphree, 326 U.S. 438, 444–45 (1946); see Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc., 840 F.2d 685, 688 (9th Cir. 1988) ("A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4.").

Service of a complaint in federal court is governed by Rule 4.  Under Rule 4, an individual may be served by: (1) delivering a copy of the summons and the complaint to that person personally; (2) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (3) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.  Fed. R. Civ. P. 4(e)(2).

"Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint."  Direct Mail, 840 F.2d at 688 (quoting United Food & Com. Workers Union v. Alpha Beta Co., 736 F.2d 1371, 1382 (9th Cir. 1984)).  However, "without substantial compliance with Rule 4, 'neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction.' "  Direct Mail, 840 F.2d at 688 (quoting Benny v. Pipes, 799 F.2d 489, 492 (9th Cir. 1986)).  "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4."  Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004) (citations omitted).  "[A] signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence."  SEC v. Internet Sols. for Bus., Inc., 509 F.3d 1161, 1163 (9th Cir. 2007).

Rule 4 also permits service on an individual in accordance with state law.  Fed. R. Civ. P. 4(e)(1).  California law permits substitute service by leaving a copy of the summons and complaint at the defendant's usual place of abode (i.e., dwelling), usual place of business, or usual mailing address (other than a U.S. Postal Service post office box).  Cal. Code Civ. Proc. § 415.20(b).  Copies of the summons and complaint must be left "in the presence of a competent

member of the household or a person apparently in charge of [the defendant's] office, place of business, or usual mailing address," and copies must thereafter be mailed to the defendant at the same address where the documents were left.  Id.  Substitute service is permitted only "[i]f a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served[.]"  Id.  "[T]he burden is upon the plaintiff to show reasonable diligence to effect personal service and each case must be judged upon its own facts."  Evartt v. Super. Ct., 89 Cal. App. 3d 795, 801 (Cal. Ct. App. 1979).  "Although there is no established formula for reasonable diligence, two or three attempts to personally serve defendant at a 'proper place' ordinarily qualifies as 'reasonable diligence.' "  Johnson, 2020 WL 1245122, at *3 (citation, internal quotation marks, and alteration omitted).

Here, rather than sue Waterford Market the entity for the purported accessibility violations, Plaintiff has chosen to sue the individual purported owners/operators/leasers in relation to the entity.[2]  The Court notes, perhaps, service was effected this way because the California Secretary of State website provides no business listing for Waterford Market.[3]  However, the Court does not further speculate on this matter, as Plaintiff provides no explanation whatsoever of the parties to this action.  To the extent this potentially affects the issue of establishing liability, the Court addresses the issue further herein.  Regardless, the Court shall examine service as to each Defendant.

### a.   Dalvinder Shahi and Kasmir Shahi

Plaintiff's counsel avers she identified the shared residential address for Dalvinder Shahi and Kasmir Shahi as 1351 Hartwick Avenue, Turlock, CA 95382 through research on the Lexis Advance public records database.  (Moore Decl. ¶ 14, ECF No. 23-2.)  Based on this research,

---

[2] In her supporting declaration, counsel for Plaintiff also asserts Defendants are not minors, incompetent persons, or persons in military service or otherwise exempted from default judgment.  (Moore Decl. ¶ 2, ECF No. 23-2.)

[3] Courts may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Courts may take judicial notice of information displayed on government websites where neither party disputes the accuracy of the information contained therein.  Daniels –Hall v. National Educ. Ass'n, 629 F.3d 992, 998-99 (9th Cir. 2010).  Specifically, Courts routinely take judicial notice of information contained in the California Secretary of State's website.  See No Cost Conf., Inc. v. Windstream Comme'ns, Inc., 940 F. Supp. 2d 1285, 1296 (S.D. Cal. 2013); Gerritsen v. Warner Bros. Ent. Inc., 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015); L'Garde, Inc. v. Raytheon Space & Airborne Sys., 805 F. Supp. 2d 932, 937 (C.D. Cal. 2011).

Dalvinder Shahi and Kasmir Shahi were served with the summons and complaint by substituted service at 1351 Hartwick Ave., Turlock, California 95382 on September 29, 2021, at 12:31 p.m. (ECF No. 5 at 2–3; ECF No. 6 at 2–3.)

"For substituted service to be reasonably calculated to give an interested party notice of the pendency of the action and an opportunity to be heard, service must be made upon a person whose relationship to the person to be served makes it more likely than not that they will deliver process to the named party." Produce v. Cal. Harvest Healthy Foods Ranch Mkt., No. C-11-04814 DMR, 2012 WL 259575, at *3 (N.D. Cal. Jan. 27, 2012) (internal quotation marks, alteration, and citations omitted). "[I]f service [is] improper, that may well explain the failure of a defendant to appear in a lawsuit." Folkmanis, Inc. v. Uptown Toys LLC, No. 18-cv-00955-EMC, 2018 WL 4361140, at *2 (N.D. Cal. Sep. 13, 2018) (internal quotation marks and citation omitted).

Here, according to the process server's declarations/proofs of service for the Shahis, which are identical, after two unsuccessful attempts at personal service at the Hartwick Avenue address on September 24, and 27, 2021, the process server left copies of the complaint and summons with "Randeep Shahi, Co-Occupant," and subsequently mailed additional copies of the complaint and summons to the same address. (ECF No. 5 at 2–3; ECF No. 6 at 2–3.) Plaintiff maintains the proofs of service reflect the summons and complaint were delivered to the Shahis' "co-occupant, Randeep Shahi, age 30, being of suitable age and discretion," but they do not. Rather, the declarations/proofs of service only indicate substitute service was completed on Randeep Shahi, "Co-Occupant." They do not indicate Randeep Shahi's age or otherwise aver facts establishing Randeep was of "suitable age and discretion," or aver facts demonstrating Randeep was "a competent member of the household or a person apparently in charge." (See generally ECF Nos. 5, 6); see also Cal. Code Civ. Proc. § 415.20(b). Indeed, it is not entirely clear to the Court that service on this address was even appropriate. Nor do the declarations/proofs of service include any facts showing that Randeep was informed of the contents of the summons, as required for substitute service under California law. Cal. Code Civ. Proc. §§ 415.20(a), (b). "This requirement is critical because if [the person who is "apparently in

9

charge"] did not know or understand the significance of the documents that [the process server] handed him, the documents may have ended up in a junk pile or recycling bin, rather than in [the defendant's] hands."  Bouyer v. 603 San Fernando Rd., LLC, No. CV-20-3853-MWF (PVCx), 2020 WL 7711840, at *2 (C.D. Cal. Nov. 2, 2020).    Finally, the Court notes the declarations/proofs of service include boilerplate language indicating substitute service was effective "under section CCP 415.20(a) *or* 415.20(b) *or* FRCP 4(e)(2)(B) *or* FRCP 4(h)(1)(B) *or* FRCIVP 4(d)(1)" (see ECF No. 5 at 2; ECF No. 6 at 2 (emphasis added)), but they do not actually identify which rule or statute was followed in order to establish that substitute service was, in fact, in compliance with any of the aforementioned legal authorities, or otherwise aver any facts to describe how the substitute service was completed.

Only after personal service has been attempted with reasonable diligence may a copy of the summons and complaint be left at the defendant's usual place of business, with a "person apparently in charge" thereof, who is "at least 18 years of age, [and] who shall be informed of the contents" of the summons.  Cal. Civ. Proc. Code § 415.20(b).  While the Court finds the process server's two prior service attempts satisfy the reasonable diligence requirement, the process server's affidavit did not include any facts showing that the substituted person was at least eighteen years old, that he was "a competent member of the household or a person apparently in charge," or that he was informed of the contents of the summons.  (See generally ECF Nos. 5, 6.)

Based on this record, the Court lacks sufficient information to conclude that adequate service has been made on Dalvinder Shahi and Kasmir Shahi.

**b.    Nirmal Kaur**

As to Defendant Nirmal Kaur, the Court also lacks sufficient information to conclude that service was proper.  The declaration/proof of service for Kaur indicates that substitute service was made pursuant to "section CCP 415.20(a) *or* 415.20(b) *or* FRCP 4(e)(2)(B) *or* FRCP 4(h)(1)(B) *or* FRCIVP 4(d)(1)" (see ECF No. 15 at 2 (emphasis added)), but does not actually identify which rule or statute was followed in order to establish that substitute service was, in fact, in compliance with any of the aforementioned legal authorities.  Service was effected at 12828 Yosemite Boulevard, Waterford, CA 95386, the address of Waterford Market, after two unsuccessful

1    attempts at personal service at that address on December 14 and 15, 2021.  (ECF No. 15 at 2.)  On

2    December 17, 2021, the process server left copies of the summons and complaint at that address

3    with "a coworker and person apparently in charge Harman Preet," and then subsequently mailed

4    the documents to the same address.  (Id.)

5           As the Court has noted, substituted service is only sufficient where it is "reasonably

6    calculated to give an interested party notice of the pendency of the action and an opportunity to be

7    heard."  Produce, 2012 WL 259575, at *3.  "California courts and commonly used secondary

8    sources have found that persons 'apparently in charge' may include secretaries, receptionists, and

9    door keepers."  Block v. Any Merced Inc., No. 1:21-cv-01251-NONE-EPG, 2022 WL 43695

10   (E.D. Cal. Jan. 5, 2022), report and recommendation adopted, No. 1:21-cv-01251-JLT-EPG, 2022

11   WL 198691, at *2 (E.D. Cal. Jan. 21, 2022) (citing Vasic v. Pat. Health, L.L.C., No. 13CV849

12   AJB (MDD), 2013 WL 12076475, at *3 (S.D. Cal. Nov. 26, 2013)).

13          Here, although the declaration/proof of service avers that the documents were left with a

14   person "apparently in charge," there are no facts in the affidavit to support this assertion, and

15   Plaintiff has provided no additional evidence.  Plaintiff's motion for default judgment only echoes

16   the proof of service stating that service on Kaur was adequate because process was served at

17   Kaur's "usual place of business" on a "person apparently in charge."  (ECF No. 23-1 at 10.)  The

18   proof of service refers to Mr. Preet as a "clerk," but does not aver any facts to show how Mr.

19   Preet was "apparently in charge."  See Produce, 2012 WL 259575, at *4 (concluding Plaintiff

20   failed to show papers were left with a person "apparently in charge" when papers were left with

21   employee with an unknown job title).

22          Further, as with the service on the Shahi Defendants, the proof of service for Kaur does

23   not include any facts showing that Mr. Preet was informed of the contents of the summons, as

24   required for substitute service under California law.  Cal. Code Civ. Proc. §§ 415.20(a), (b).

25   Again, "[t]his requirement is critical because if [the person who is "apparently in charge"] did not

26   know or understand the significance of the documents that [the process server] handed him, the

27   documents may have ended up in a junk pile or recycling bin, rather than in [the defendant's]

28   hands."  Bouyer, 2020 WL 7711840, at *2; see also EDJX, Inc. v. 6x7 Networks, LLC, No. 21-

1  cv-02398-SK, 2021 WL 4262290, at *2 (N.D. Cal. Sept. 20, 2021) ("[T]he proofs of service were

2  defective because they fail to state that the process server informed John Doe, with whom the

3  process server left the summons and complaint, of the contents of was delivered.")

4      Had Kaur been adequately served, it is possible he could have answered and potentially

5  raised a meritorious defense. See Folkmanis, Inc., 2018 WL 4361140, at *2.

6      Based on the foregoing, the Court finds service is not adequate as to any Defendant and

7  recommends denying Plaintiff's motion for default judgment without prejudice for inadequate

8  service of the summons and complaint.

9      While the Court finds the motion for default judgment should not be granted based on

10  insufficient service of process on the Defendants, the Court nonetheless proceeds to

11  consideration of whether the Eitel factors would otherwise weigh in favor of granting Plaintiff's

12  motion for default judgment, in the event the District Judge finds service is adequate based on

13  the current record, or through objections filed by Plaintiff to these findings and

14  recommendations.[4]

15      **B.    The Eitel Factors Weigh in Favor of Default Judgment**

16      The Court finds that if it were to proceed on the basis that service was sufficient,

17  consideration of the Eitel factors would weigh in favor of granting default judgment in favor of

18  Plaintiff with respect to his claims against Defendant Kaur but not Defendants Dalvinder Shahi or

19  Kasmir Shahi.

20      1.    Possibility of Prejudice to Plaintiff

21      The first factor considered is whether Plaintiff would suffer prejudice if default

22  judgment is not entered. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Generally, where default

23  has been entered against a defendant, a plaintiff has no other means by which to recover against

24  that defendant. Id.; Moroccanoil, Inc. v. Allstate Beauty Prods., 847 F. Supp. 2d 1197, 1200–01

25  (C.D. Cal. 2012). Here, the Court finds Plaintiff would be prejudiced if default judgment were

26  not granted because Plaintiff does not have any other way to recover against Defendants. See

27  ────────────

[4] Cf. Produce, 2012 WL 259575, at *5 (declining to engage analysis of Eitel factors following finding that the summons and complaint were not properly served on either defendant); see also Block, 2022 WL 43695 (same, on findings and recommendations).

28

1    Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014).  This factor weighs in favor

2    of default judgment against all Defendants.

3         2.    Merits of Plaintiff's Claims and Sufficiency of the Complaint

4        The second and third Eitel factors, taken together, "require that [the] plaintiff[s] state a

5    claim on which [they] may recover."  PepsiCo, Inc., 238 F. Supp. 2d at 1175.  Notably a

6    "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of

7    law."  DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007).  As mentioned, the

8    amended complaint asserts claims under the ADA, the Unruh Act, and the California Health and

9    Safety Code.  His motion addresses only the claims for violation of the ADA and the Unruh Act,

10    however, which are analyzed with respect to each Defendant herein.

11        The Court previously summarized the allegations contained in the operative complaint and

12    supporting documents that were submitted in support of the motion for default judgment.  The

13    Court incorporates Section I here by way of reference.

14       **a.**    **ADA**

15        Title III of the ADA provides that "[n]o individual shall be discriminated against on the

16    basis of disability" in places of public accommodation.  42 U.S.C. § 12182(a).  "Discrimination"

17    is defined as a failure to make reasonable modifications in policies, practices, or procedures,

18    when modification is necessary to afford such goods, services, facilities, privileges, advantages,

19    or accommodations to individuals with disabilities, unless modifications would fundamentally

20    alter the nature of such goods, services, facilities, privileges, advantages, or

21    accommodations."  Id. § 12182(b)(2)(A)(ii).

22        "To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is

23    disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or

24    operates a place of public accommodation; and (3) the plaintiff was denied public

25    accommodations by the defendant because of her [or his] disability."  Molski v. M.J. Cable, Inc.,

26    481 F.3d 724, 730 (9th Cir. 2007).  Facilities include "all or any portion of buildings, structures,

27    sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways,

28    parking lots, or other real or personal property, including the site where the building, property,

structure, or equipment is located." 28 C.F.R. § 36.104. Further, "[t]o succeed on an ADA claim of discrimination on account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable." Hubbard v. 7-Eleven, Inc., 433 F. Supp. 2d 1134, 1138 (S.D. Cal. 2006) (quoting Parr v. L & L Drive-Inn Rest., 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000)); see also Wyatt v. Ralphs Grocery Co., 65 F. App'x 589, 590 (9th Cir. 2003).

A private party is only entitled to injunctive relief under Title III of the ADA, however, the ADA gives the court discretion to award attorney fees to the prevailing party. Molski, 481 F.3d at 730.

i.    Whether Plaintiff is Disabled Within the Meaning of the ADA

Plaintiff must allege that he is disabled under the ADA. Molski, 481 F.3d at 730. The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities include walking, standing, and hearing. 42 U.S.C. § 12102(2)(A). An individual who is substantially limited in his ability to walk is disabled under the ADA. 42 U.S.C. § 12102.

Plaintiff alleges that he is substantially limited in his ability to walk, and uses a wheelchair or prosthetic for mobility. (ECF No. 11 at 2.) Taking the allegations in the complaint as true for purposes of default judgment, Plaintiff has adequately established this element of his ADA discrimination claim.

ii.    Whether Defendants Own, Lease, or Operate a Place of Public Accommodation

Plaintiff must allege each Defendant "owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a); Molski, 481 F.3d at 730.

1)    Place of Public Accommodation

As an initial matter, the Court finds Waterford Market, a convenience store/gas station,[5] is a place of public accommodation. This is supported by Plaintiff's allegations (ECF No. 11 at 1), and the ADA, which provides that a "gas station" is considered a public accommodation. 42

---

[5] See, e.g., www.yellowpages.com/waterford-ca/mip/waterford-market-3894259 (last visited May 11, 2022).

14

1    U.S.C. § 12181(7)(F).

2         2)     Owns, Leases, or Operates

3         Plaintiff produces a copy of the California Department of Alcoholic Beverage Control

4    ("ABC") report for Waterford Market, which expressly states Nirmal Kaur is the "Primary

5    Owner" of Waterford Market, located at 12828 Yosemite Blvd, Waterford, CA 95386.  (ECF No.

6    23-3 at 17.)    Therefore, Plaintiff has adequately established this element of his ADA

7    discrimination claim as to Defendant Kaur.

8         The Court is not persuaded, however, that Plaintiff has sufficiently asserted well-pleaded

9    facts or submitted evidentiary support for the legal conclusion that Dalvinder or Kasmir Shahi

10   own, lease, or operate the Waterford Market so as to be proper named Defendants in this action.

11   According to Plaintiff's counsel, Dalvinder Shahi and Kasmir Shahi own the real property on

12   which Waterford Market is located.  (Moore Decl. ¶ 14, ECF No. 23-2.)   In support of this

13   assertion, Ms. Moore attaches a grant deed showing that Assessor's Parcel No. 134 12 04 400 was

14   deeded to Dalvinder Shahi and Kasmir Shahi, husband and wife, as Joint Tenants.  (ECF No. 23-3

15   at 14 (Ex. D).)  Ms. Moore states in her declaration that the grant deed "reflect[s] that Defendants

16   Dalvinder S. Shahi and Kishmir K. Shahi own the real property on which the Facility is located."

17   It does not.  Instead, the parcel, which does not include a street address, is described as:

18              Parcel B as shown on Parcel Map filed March 16, 1967 in Book 3,
                Page 25 of Parcel Maps in the Office of the County Recorder of
19              Stanislaus County, being a portion of Lot 3, 4, 5, 6 and 7 in Block
                22, Town of Waterford, formerly known as Parcel B as shown and
20              designated on that certain Parcel Map filed in the Office of the
                County Recorder of Stanislaus County, California, on February 9,
21              1966 in Volume 1 of Parcel Maps, Page 47, said map being a
                portion of Lots 3, 4, 5, 6 and 7 in Block 22 Town of Waterford,
22              according to the Official Map thereof, filed in the Office of the
                Recorder of Stanislaus County, California, on November 15, 1905
23              in Volume 1 of Maps, Page 31.

24              The Grantee herein assumes and agrees to pay the unpaid balance
                of principal and interest of the [note] secured by a Deed of Trust
25              recorded February 28, 1989, as Instrument No. 013451, of official
                records of said County.
26

27   (Id. at 15.)  No further documents or explanation are provided to establish a connection between

28   the property described in the grant deed and Waterford Market, located at 12828 Yosemite Blvd.,

Waterford, California 95386.  The original deed of trust for the identified parcel is not provided. And no individual alleges or avers the search of public records or process by which it was confirmed that Waterford Market is located on the land described in the attached grant deed.

The California Department of Alcoholic Beverage Control ("ABC") report Plaintiff provides also does not help bridge this gap; instead, it indicates only Nirmal Kaur as primary owner of Waterford Market (and does not identify Dalvinder Shahi or Kasmir Shahi in any capacity), and it lists the facility by street address and Census Tract (0028.01) but not parcel number, nor does it provide any other information potentially connecting the Shahis to Waterford Market.  (Ex. E, ECF No. 23-3.)  Ms. Moore avers that the ABC report demonstrates Kaur is a licensee, perhaps suggesting (misleadingly) that Kaur rents or licenses Waterford Market from the Shahis, as landowners.  (Compare Moore Decl. ¶ 15 (referring to "[ABC] report that shows Nirmal Kaur dba Waterford Market as licensee") with ECF No. 11 at ¶ 7 (alleging Defendants "own, operate, and/or lease the Facility").)  Notwithstanding the lack of any showing that defendant lessors of property on which a noncompliant market is situated exert any control over the market so as to establish liability, the Court notes the ABC report only indicates Kaur is licensed through the ABC to sell alcohol at Waterford Market.  (ECF No. 23-3 at 17.)  This does not connect the Shahis to Waterford Market or otherwise imply the Shahis either (1) own the land on which Waterford Market sits and are leasing the land to Kaur or (2) own Waterford Market and are leasing, licensing, franchising, or otherwise fulfilling an agency relationship with Kaur with respect to Waterford Market.

Further, even if the property on which Waterford Market is located and that as described in the grant deed preponderate to be one and the same, there is no indication that the Shahis remain owners of that land based on the attached grant deed, which was recorded on June 10, 1997.  As noted on the grant deed, the address for the Shahis is 1801 English Ave., Turlock, CA 95380 (ECF No. 23-3 at 14), yet service was effected on the Shahis on September 29, 2021, at 1351 Hartwick Ave., Turlock, California 95382 (ECF No. 5 at 2; ECF No. 6 at 2).  Ms. Moore states she discovered the Shahis' home address based on her research on the Lexis Advance public records database (Moore Decl. ¶ 14), but she does not explain the discrepancy in

addresses, nor does she aver that her research reveals the Shahis are the current owners (at times relevant to the complaint) of the identified property.  Based on this record, it is not clear to this Court that Plaintiff has established any connection between the Shahi Defendants and Waterford Market, such that they would be proper defendants in this action, nor is it clear to this Court what alternate theory of liability Plaintiff may pursue against these Defendants.

Accordingly, taking only the well-pleaded allegations as true for purposes of default judgment (and not unsupported conclusions of law), DIRECTV, Inc., 503 F.3d at 854, the Court finds Plaintiff has sufficiently alleged that Defendant Kaur, but not Defendants Dalvinder Shahi or Kasmir Shahi, owns or operates the Waterford Market, which is a place of public accommodation.  Plaintiff has therefore established this element of his ADA claim as asserted against Kaur but not the Shahi Defendants.  On this basis, the Court finds granting default judgment against the Defendants Dalvinder Shahi and Kasmir Shahi is inappropriate.

     iii.     Whether Plaintiff Was Denied Public Accommodations Because of His Disability, due to an Architectural Barrier Prohibited Under the ADA

     1)     Whether Denial of Access Was Due to Disability

Plaintiff must allege and prove that he was denied public accommodations by a defendant because of his disability.  Molski, 481 F.3d at 730.  Here, Plaintiff alleges he had difficulty walking to the facility with his prosthetic leg due to the described barriers in the parking lot and access aisle, and that he nearly lost his balance and fell due to the slope of the floor inside the facility.  (ECF No. 11 at 3.)  Taking the allegations in the complaint as true for purposes of default judgment, Plaintiff has adequately established he was denied access to the facility due to his disability.

     2)     Architectural Barrier

Congress entrusted the Attorney General with promulgating the implementing regulations for Title III.  Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004) (citing 42 U.S.C. § 12186(b)).  Congress provided that these implementing regulations must be consistent with the minimum guidelines issued by the Architectural and Transportation Barriers Compliance Board, which issued its final ADA Accessibility Guidelines for Buildings and Facilities

("ADAAG") in 1991.  Id. (citing 42 U.S.C. § 12186(c); 36 C.F.R. Pt. 1191, App. A).   The Attorney General adopted the ADAAG as the "Standards for Accessible Design," and they lay out the technical structural requirements of places of public accommodation and are applicable during the design, construction, and alteration of such facilities.  Id. (citing 28 C.F.R. Pt. 36, App. A).   "Whether a facility is 'readily accessible' is defined, in part, by the ADA Accessibility Guidelines."  Chapman, 631 F.3d at 945.

Plaintiff proffers that because no discovery has occurred, he does not know if Waterford Market was constructed or had any alteration done after March 15, 2012, and therefore will apply the 1991 ADAAG standards to determine whether a barrier existed at the time of his visit to the Facility.  (ECF No. 23-1 at 4.)  However, Plaintiff submits — and the Court agrees — that the 2010 Standards now in effect will govern any injunction which issues though, since the remedial work will be undertaken after March 15, 2012.  (Id.)

As noted above, Plaintiff alleges the surface of the access aisle next to his vehicle and path of travel from the parking lot to the facility entrance was rough and uneven, with large cracks and height changes, causing Plaintiff to have difficulty walking to the facility with his prosthetic leg (ECF No. 11 at 3); and thus argues that Defendants failed to provide a level access aisle next to the designated accessible parking stall and an accessible route of travel from the designated accessible parking to the Facility entrance, in violation of 1991 ADAAG §§ 4.6.3 and 4.3.8, and 2010 Standards §§ 502.4 and 303 (ECF No. 23-1 at 5).

Plaintiff also alleges there was an excessive slope in the floor inside the facility, in front of the transaction counter, which Plaintiff did not notice until he lost his balance and almost fell (due to his prosthetic leg) (ECF No. 11 at 3); and thus argues that Defendants have failed to provide a proper clear floor space in front of the transaction counter, in violation of 1991 ADAAG §§ 7.2 and 4.2.4.3, and 2010 Standards §§ 904.4 and 305.2 (ECF No. 23-1 at 5).

The Court notes that even on default judgment in ADA cases, plaintiffs often present the results of an investigation by an independent consultant, such as a construction expert that takes measurements, or at least a more detailed declaration of the plaintiff in support of the claim that there is an architectural barrier.  Nonetheless, taking the allegations as true for purposes of default

judgment as presented by Plaintiff in his complaint, and based on the applicable laws and regulations, the Court finds Plaintiff has sufficiently alleged and demonstrated the presence of architectural barriers present at Waterford Market which violate the ADA.

      iv.     Whether Removal of the Barrier Is Readily Achievable

Removal of an architectural barrier is "readily achievable" if it is "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C § 12181(9). Factors to be considered in determining whether such removal is readily achievable include: "(A) the nature and cost of the action needed under this chapter; (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility; (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity." Id. Federal regulations provide examples of readily achievable steps to remove barriers, including: installing ramps, making curb cuts in sidewalks and entrances, widening doors, eliminating a turnstile or providing an alternative accessible path, and creating designated accessible parking spaces, among other examples. 28 C.F.R. § 36.304(b).

The Ninth Circuit has recently adopted the burden-shifting framework set forth by the Second Circuit in Roberts v. Royal Atlantic Corporation, 542 F.3d 363 (2d Cir. 2008), to determine who bears the burden of proving that removal of an architectural barrier is readily achievable. See Lopez v. Catalina Channel Express, Inc., 974 F.3d 1030, 1034–39 (9th Cir. 2020). Under this burden-shifting analysis, the plaintiff bears the initial burden of "plausibly showing" that a proposal for removing a barrier is readily achievable, and then the burden shifts to the defendant with respect to the ultimate burden of persuasion on an affirmative defense that removal of a barrier is not readily achievable. See id.

Applying this burden-shifting framework here, Plaintiff has met his initial burden to

plausibly show that removal of the identified barriers in the parking lot and in front of the transaction counter are readily achievable.  Plaintiff maintains Defendants can easily remove the barriers without much difficulty or expense, as it can be completed by resurfacing the access aisle and route of travel.  (ECF No. 23-1 at 5.)  Further, federal regulations provide a non-exclusive list of steps to remove barriers, including "[c]reating designated accessible parking spaces."  28 C.F.R. § 36.304(b)(18).  Courts have observed that the listed items are "examples of readily achievable steps to remove barriers" and found similar allegations to those alleged here sufficient at the default judgment stage.  Johnson v. Garlic Farm Truck Ctr. LLC, No. 20-cv-03871-BLF, 2021 WL 2457154, at *5–6 (N.D. Cal. June 16, 2021) (correcting uneven surface slopes between parking spaces and access aisles is readily achievable); Johnson v. Altamira Corp., No. 16-cv-05335 NC, 2017 WL 1383469 (N.D. Cal. Mar. 27, 2017), report and recommendation adopted, No. 16-CV-05335-LHK, 2017 WL 1365250 (N.D. Cal. Apr. 14, 2017) (deficient travel paths from disabled parking spaces to entrance of facility); Johnson v. Shahkarami, No. 5:20-cv-07263-BLF, 2021 WL 1530940, at *4–5 (N.D. Cal. Apr. 19, 2021) (lack of suitable sales counter).

Based on the foregoing, the Court finds Plaintiff has met his burden to plausibly show that a proposal for removing the identified barriers is readily achievable.  Lopez, 974 F.3d at 1034–39.  The burden thus shifts to Defendants to show that removal of the identified barriers is not readily achievable.  Here, Defendants have not appeared in or defended this action.  Thus, Defendants have failed to meet their burden.

In sum, the Court finds Plaintiff has met his burden of stating a prima facie claim for discrimination under Title III against Defendant Kaur but not Defendants Dalvinder Shahi or Kasmir Shahi.  Plaintiff is thereby entitled to injunctive relief for the violations of the ADA as asserted against Kaur.

**b.    Unruh Act**

Plaintiff also brings a state law claim for violation of the Unruh Act.  Pursuant to the Unruh Act, all persons are "entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal Civ. Code §

51(b).  Additionally, no business establishment of any kind whatsoever shall discriminate against any person in this state on account of disability.  Cal. Civ. Code § 51.5.  Unlike the ADA, the Unruh Act permits the recovery of monetary damages, in the form of actual and treble damages, at a statutory minimum of at least $4,000.00 per violation.  Cal. Civ. Code § 52(a); Molski v. M.J. Cable, Inc., 481 F.3d 724, 731 (9th Cir. 2007); Vogel, 992 F. Supp. 2d at 1011.  After passage of the ADA in 1990, the Unruh Act was amended to provide that a violation of the ADA constitutes a violation of the Unruh Act.  Pickern v. Best W. Timber Cove Lodge Marina Resort, 194 F. Supp. 2d 1128, 1131 (E.D. Cal. 2002); Cal. Civ. Code § 54.1(d) ("A violation of the right of an individual under the Americans with Disabilities Act of 1990 . . . also constitutes a violation of this section.").  Thus, the Unruh Act incorporates an individual's rights under the ADA by reference, such that a violation of the ADA also constitutes a violation of the Unruh Civil Rights Act.  Cal. Civ. Code § 51(f).

Here, Plaintiff alleges that Defendants denied him full and equal accommodations, advantages, facilities, privileges and services in a business establishment based on his disability. (ECF No. 11 at 7.)  Because Plaintiff's complaint properly alleges a prima facie claim under the ADA against Kaur but not the Shahi Defendants, the Court finds Plaintiff has also properly alleged facts establishing the necessary elements for an Unruh Civil Rights Act claim as against Kaur but not the Shahi Defendants.

For the reasons set forth above, the Court finds that the second and third Eitel factors weigh in favor of default judgment as asserted against Defendant Kaur but not as asserted against the Shahi Defendants.

> 3.    The Sum of Money at Stake in the Action

Under the fourth Eitel factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct."  PepsiCo, Inc., 238 F Supp. 2d at 1176; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003).

Here, the sum of money at stake in this action weighs in favor of granting default judgment.  Default judgment is disfavored where large amounts of money are involved, or the award would be unreasonable in light of the defendant's actions.  G & G Closed Circuit Events,

1  LLC v. Nguyen, No. 3:11-cv-06340-JW, 2012 WL 2339699, at *2 (N.D. Cal. May 30, 2012);

2  PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002) ("Under the

3  third Eitel factor, the court must consider the amount of money at stake in relation to the

4  seriousness of Defendant's conduct.").   In addition to injunctive relief, Plaintiff is seeking

5  statutory damages in the amount of $4,000.00, attorneys' fees and paralegals' fees in the amount

6  of $4,672.00, and costs of $772.20, for a total award of $8,435.00.  (ECF No. 23-1 at 6–8.)  This

7  is not an excessive amount of money, nor does it seem unreasonable in light of the allegations

8  contained in the complaint.  See Vogel, 992 F. Supp. 2d at 1012 (citing Moore v. Cisneros, No.

9  1:12-cv-00188 LJO SKO, 2012 WL 6523017, *4 (E.D. Cal. Dec. 13, 2012) (noting an award of

10  $10,119.70 on default judgment in ADA discrimination case was "not a relatively large sum of

11  money, nor d[id] it appear unreasonable")); Johnson v. Huynh, No. CIV S-08-1189 JAM DAD,

12  2009 WL 2777021, *2 (E.D. Cal. Aug. 27, 2009) (holding injunctive relief and an award of

13  $12,000.00 for ADA violations on default judgment was "relatively small award of damages").

14         Further, the Court recommends the attorneys' fees should be reduced.  Accordingly, this

15  factor does not weigh against entry of default judgment.

16              4.    The Possibility of a Dispute Concerning Material Facts

17         The next Eitel factor considers the possibility of dispute concerning material facts.  As

18  discussed previously, Plaintiff has sufficiently alleged disability discrimination under the ADA

19  and the Unruh Act by demonstrating his encountering of architectural barriers at the Facility.

20  However, Plaintiff only met his burden of establish these claims as asserted against Defendant

21  Kaur, and not Defendants Dalvinder Shahi or Kasmir Shahi.  Thus, the Eitel factors only support

22  granting default judgment against Defendant Kaur.  Furthermore, the Court found that the proofs

23  of service were insufficient to demonstrate Defendants were properly served; on this basis, the

24  fifth Eitel factor weighs against default judgment as to all Defendants.

25         Again, if the District Judge finds service has been effectuated, the Court would then find

26  this factor weighs in favor of entering default judgment against Defendant Kaur, as then there

27  would be no possibility of dispute regarding the material facts due to the factual allegations in the

28  complaint being taken as true upon Defendant's default.  See Garamendi, 683 F.3d at 1080;

PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages.").

Accordingly, the Court finds this Eitel factor weighs in favor of granting default judgment in favor of Plaintiff against Defendant Kaur, if the District Judge finds service to be sufficient.

5. Whether the Default was Due to Excusable Neglect

The sixth Eitel factor considers the possibility that Defendants' default resulted from excusable neglect. PepsiCo, Inc., 238 F. Supp. 2d at 1177. Courts have found that where a defendant was "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect. Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

As noted before, the Court found that Plaintiff has not demonstrated service was sufficiently effectuated on the Defendants in this action, and thus the Court finds this factor weighs against granting default judgment.

However, if the District Judge determines service to be adequate, the Court otherwise finds this factor weighs in favor of granting default judgment as Defendants have failed to file a responsive pleading or otherwise appear in this action. See Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) ("The default of defendant . . . cannot be attributed to excusable neglect. All were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion.").

6. The Strong Policy Favoring a Decision on the Merits

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010).

As noted before, the Court found that Plaintiff has not demonstrated service was

23

sufficiently effectuated on the Defendants in this action, and thus the Court finds this factor weighs against granting default judgment.

However, as also previously discussed, if the District Judge determines service to be adequate, the Court otherwise finds the policy favoring decisions on the merits would not weigh against entering default judgment where, as here, Defendants' failure to appear makes a decision on the merits impossible.  Given the prejudice to Plaintiff if default judgment is not granted as discussed above, and the merits of the allegations contained in complaint, granting default judgment in this case would not violate the general policy under the Federal Rules of Civil Procedure favoring decisions on the merits, if service was adequate.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177 ("Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible.  Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action.").

In conclusion, the Court finds default judgment is inappropriate because Plaintiff failed to establish proper service of process on Defendants.  Nevertheless, in the event service is deemed valid, upon consideration of the Eitel factors as delineated above, the Court concludes that Plaintiff is only entitled to the entry of default judgment against Defendant Kaur but not Defendants Dalvinder Shahi or Kasmir Shahi.

## C.      Requested Relief

As previously noted by the Court, in addition to injunctive relief, Plaintiff is seeking statutory damages in the amount of $4,000.00, attorneys' fees and paralegals' fees in the amount of $4,672.00, and costs of $772.20, for a total award of $8,435.00.  (ECF No. 23-1 at 6–8.)  If the District Judge finds service adequate, the Court would recommend awarding the statutory fees and costs as requested, but would recommend reducing the award of attorneys' fees.

### 1.      Injunctive Relief

Plaintiff seeks injunctive relief under the ADA for violations alleged in the complaint.  In particular, Plaintiff seeks an injunction requiring removal of all architectural barriers to Plaintiff's access to the facility.  42 U.S.C. § 12188 provides that "injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with

1   disabilities to the extent required" by the ADA.  42 U.S.C. § 12188(a)(2).  A court may also grant

2   injunctive relief for violations of the Unruh Act under § 52.1(h).  Vogel, 992 F. Supp. 2d at 1015;

3   Cal. Civ. Code § 52.1 ("An action brought pursuant to this section is independent of any other

4   action, remedy, or procedure that may be available to an aggrieved individual under any other

5   provision of law."); Johnson v. Pizano, No. 2:17-CV-1655 TLN DB, 2019 WL 2499188, at *6

6   (E.D. Cal. June 17, 2019) ("Injunctive relief may be granted 'when architectural barriers at

7   defendant's establishment violate the ADA.' ").

8          Pursuant to federal and state law, Plaintiff is entitled to the removal of those architectural

9   barriers which he encountered on his visit to Waterford Market that violated the ADA.  Therefore,

10  an injunction should issue requiring Defendant Kaur to provide accessible parking and an

11  accessible transaction counter for persons with disabilities.

12         2.    Statutory Damages[6]

13         Plaintiff seeks statutory damages in the amount of $4,000.00 as authorized by the

14  California Unruh Civil Rights Act.  The Unruh Act provides for minimum statutory damages of

15  $4,000.00 for each violation.  Cal. Civ. Code § 52(a).  Under the Unruh Act, statutory damages

16  may be recovered if a violation of one or more construction related accessibility standards denied

17  the plaintiff full and equal access to the place of public accommodation on a particular occasion.

18  Cal. Civ. Code § 55.56(a).  A plaintiff is denied full and equal access only when they personally

19  _____

20  [6] As previously noted, the Court does not find default judgment is appropriate against Defendants Dalvinder Shahi or
    Kasmir Shahi, where Plaintiff has not established any connection between these Defendants and the at issue facility,
    Waterford Market.  However, if the District Judge ultimately finds liability is sufficiently established as asserted

21  against these Defendants as well, the Court additionally notes with respect to Plaintiff's claim for damages that
    "California district courts have repeatedly held that where there are multiple defendants in an Unruh action, the

22  defendants are jointly and severally liable for penalties."  Johnson v. Siu Keung Chan, No. 2:17-cv-00138-KJM-AC,
    2020 WL 5036456, at *2 (E.D. Cal. Aug. 26, 2020), report and recommendation adopted, No. 2:17-cv-0138-KJM-

23  AC, 2020 WL 6342960 (E.D. Cal. Oct. 29, 2020) (citing Love v. Kim, No. ED CV 18-1338 FMO (PLAx), 2019 WL
    8167926, at *1 (C.D. Cal. Oct. 18, 2019) ("courts generally award only a single $4,000 statutory damage penalty

24  where multiple defendants who own or operate a business are held liable for an ADA violation")); Johnson v.
    Express Auto Clinic, Inc., No. 18-cv-00464-KAW, 2019 WL 2996431, *8 (N.D. Cal. Jul. 9, 2019) (entering

25  judgment of "$4,000 in statutory damages" in case where multiple defendants operated a non-compliant gas
    station); Johnson v. Ramirez Ltd. P'ship, No. 2:15-cv-02304-JAM-AC, 2019 WL 2315290, *8 (E.D. Cal. May 31,

26  2019) ("award[ing] a total of $4,000 in statutory damages, as authorized by the Unruh Civil Rights Act, Cal. Civ.
    Code § 52(a), jointly and severally against the defendants" where defendants owned non-compliant cafe); Hopson v.

27  Singh, No. 2:16-cv-3014-TLN-EFB, 2019 WL 4298040, *5 (E.D. Cal. Sept. 11, 2019) (same, where multiple
    defendants owned non-compliant gas station)).  Likewise, co-owner defendants are jointly and severally liable for

28  violations of the ADA.  See Moore v. Cisneros, No. 1:12-cv-00188-LJO-SKO, 2012 WL 6523017 (E.D. Cal. Dec.
    13, 2012) (citing Botosan v. McNally Realty, 216 F.3d 827, 832 (9th Cir. 2000)).

1   encountered the violation on a specific occasion.  Cal. Civ. Code § 55.56(b).  A litigant need not

2   prove any actual damages to recover statutory damages of $4,000.00.  Molski, 481 F.3d at 731.

3       As discussed above, Plaintiff sufficiently alleged violation of the ADA against Defendant

4   Kaur, which established a violation of the Unruh Act, and thus the Court finds that Plaintiff is

5   entitled to statutory damages in the amount of $4,000.00 if service is found to be adequate by the

6   District Judge.

7       3.    Attorneys' Fees and Costs

8       Plaintiff is requesting attorneys' fees in the amount of $4,672.00, and costs of $707.00, for

9   a total award of $5,444.20 in fees and costs.  (ECF No. 23-1 at 6 – 8; ECF No. 23-2; ECF No. 23-

10  3 at 1–13; ECF No. 23-4; ECF No. 23-5.)  Both the ADA and Unruh Act authorize the award of

11  attorneys' fees and costs for an action.  See 42 U.S.C. § 12205; Cal. Civ. Code § 52(a).  Pursuant

12  to 42 U.S.C. § 12205, the party that prevails on a claim brought under the ADA may recover "a

13  reasonable attorney's fee, including litigation expenses," at the discretion of the Court.  "[U]nder

14  federal fee shifting statutes the lodestar approach is the guiding light in determining a reasonable

15  fee."  Antoninetti v. Chipotle Mexican Grill, Inc., 643 F.3d 1165, 1176 (9th Cir. 2010) (internal

16  punctuation and citations omitted).  The Ninth Circuit has explained the lodestar approach as

17  follows:

18          The lodestar/multiplier approach has two parts.  First a court
19          determines the lodestar amount by multiplying the number of hours
            reasonably expended on the litigation by a reasonable hourly rate.
20          The party seeking an award of fees must submit evidence
            supporting the hours worked and the rates claimed.  A district court
21          should exclude from the lodestar amount hours that are not
            reasonably expended because they are excessive, redundant, or
22          otherwise unnecessary.  Second, a court may adjust the lodestar
            upward or downward using a multiplier based on factors not
23          subsumed in the initial calculation of the lodestar.  The lodestar
            amount is presumptively the reasonable fee amount, and thus a
24          multiplier may be used to adjust the lodestar amount upward or
            downward only in rare and exceptional cases, supported by both
25          specific evidence on the record and detailed findings by the lower
            courts that the lodestar amount is unreasonably low or unreasonably
26          high.

27  Van Gerwin v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000) (internal citations

28  and punctuation omitted).

26

Under the lodestar method, the Court will first determine the appropriate hourly rate for the work performed, and that amount is then multiplied by the number of hours properly expended in performing the work. *Antoninetti*, 643 F.3d at 1176. The district court has the discretion to adjust the number of hours claimed or the lodestar, but is required to provide a clear but concise reason for the fee award. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). The lodestar amount is to be determined based upon the prevailing market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 896 (1984).

### a.    Reasonable Hourly Rates

Counsel Tanya E. Moore has been in practice for over twenty years, over ten of which has been spent almost exclusively specializing in plaintiffs' disability access litigation. (Moore Decl. ¶¶ 3–4.) She has filed and successfully prosecuted over 1,500 civil rights actions. (Id. at ¶ 3.) Her normal hourly billing rate is $650. (Id. at ¶ 6.) Paralegal Whitney Law has thirteen years of paralegal experience, nine of which were spent specializing in disability access litigation. (Law Decl. ¶ 2.) Her currently hourly billable rate is $195. (Id. at ¶ 3.) Paralegal Isaac Medrano has over ten years of paralegal experience, including five years specializing in disability access litigation. (Medrano Decl. ¶ 2.) His current hourly billable rate is $175. (Id. at ¶ 3.) However, Plaintiff requests an hourly rate of $300.00 for work by attorney Tanya Moore and $115.00 for work by paralegals Whitney Law and Isaac Medrano. (Moore Decl. ¶¶ 6, 10, 11.)

Courts in this district have found these rates reasonable for the services of attorney Moore and for the services of her paralegals. *See, e.g., Trujillo v. Singh*, No. 1:16-cv-01640-LJO-EPG, 2017 WL 1831941, at *3 (E.D. Cal. May 8, 2017); *accord, e.g., Trujillo v. GH Food Mart, Inc.*, No. 1:20-cv-00368-AWI-SKO, 2020 WL 4697139, at *7 (E.D. Cal. Aug. 13, 2020); *Trujillo v. La Valley Foods, Inc.*, No. 1:16-cv-01402-AWI-BAM, 2017 WL 2992453, at *5 (E.D. Cal. Jul. 14, 2017); *Trujillo v. Lakhani*, No. 1:17-cv-00056-LJO-SAB, 2017 WL 1831942, at *7 (E.D. Cal. May 8, 2017). The Court therefore finds the requested hourly rates to be reasonable for Ms. Moore and her paralegals, and recommends that Plaintiff receive the requested $300.00 per hour for the services of counsel Moore and the requested $115.00 per hour for the services of the paralegals.

### b.      Reasonable Attorney and Paralegal Time Expended

Ms. Moore proffers she expended 12.2 hours.   (Moore Decl. ¶ 9; ECF No. 23-3.) Paralegals Ms. Law and Mr. Medrano proffer they expended a total of 3.7 hours and 5.1 hours on this matter, respectively.  (Law Decl. ¶ 4; Medrano Decl. ¶ 4; ECF No. 23-3.)

With respect to the hours billed prior to filing the complaint, Ms. Moore proffers through her billable hours spreadsheet that she spent 1.4 hours researching and investigating Plaintiff's claims, 1.6 hours communicating with Plaintiff, and .4 hours related to other miscellaneous case-related review and documents.  (ECF No. 23-3 at 2.)  Ms. Moore's research included research on the parties.  In addition to Ms. Moore's research into Plaintiff's claims, Ms. Law also spent .9 hours reviewing documents and information from Plaintiff, conducting further research on the parties, and revising the "draft complaint."[7]   (ECF No. 23-2 at 2.)  Ms. Moore then spent 2.2 hours related to drafting the initial complaint — which included further review of all information from Plaintiff, conducting further research of Plaintiff's claims, and confirming the "accuracy of parties named in the complaint," and communicating with Plaintiff and staff about it.  (ECF No. 23-3 at 2–3.)  This Court has previously noted that "[b]ased upon the Court's familiarity with the actions filed by Ms. Moore's firm in this court, the Court is aware that [Moore uses a] form complaint [that] is substantially similar to dozens of other actions filed in this district," and previously found "time billed [to be] excessive and duplicative and .5 hours would be a reasonable amount of time for Ms. Moore to spend on preparing, researching, reviewing, and drafting the complaint."  Trujillo, 2017 WL 1831942, at *7.  Nonetheless, the Court finds Ms. Law's time of .9 hours for this category of work, though it appears to include a fair amount of overlap with the work performed and billed by Ms. Moore, is reasonable, given the amount of initial case research, investigation, and work up that may be expected to be performed by the paralegal prior to attorney review.

---

[7] These totals do not include the two hours Ms. Moore additionally charged for driving to and from the facility, in order to conduct further "investigation."  The Court finds no discernible benefit or substantive information contained in the amended complaint or the motion for default judgment that reflects the usefulness of this site visit by counsel. The amended complaint and motion for default judgment only contain the basic facts as alleged by Plaintiff as to his specific visit to Waterford Market.  Consequently, the Court finds the time expended on such site visit to not be reasonable, and reduces the entry accordingly.

After submission of the complaint, the Court finds that much of the time billed by Ms. Moore and her staff relating to the multiple requests for default and the filing of the amended complaint in this action requires reduction.  Mr. Medrano spent .3 hours preparing the proofs of service and then spent .9 hours preparing and serving the requests for entry of default following Defendants' failure to respond to the original complaint.  (ECF No. 23-3 at 3.)  Interestingly, this includes the time (.1 hours) Mr. Medrano spent serving and seeking default against an improperly named defendant who was subsequently dismissed from the action.  Ms. Moore purportedly spent 1 full hour reviewing Mr. Medrano's work on the default papers before the requests for entry of default were filed.  (ECF No. 23-3 at 3.)  Thereafter, Ms. Law spent 1.1 hours conducting further public records research regarding the parties, determining at this juncture that a wrong party was named, and preparing a draft amended complaint.  (ECF No. 23-3 at 3–4.)  Ms. Moore then spent .9 hours reviewing her staff's notes on the improper party issue, the draft amended complaint, and new service instructions, and advising Plaintiff.  (ECF No. 23-3 at 4.)  Thereafter, Mr. Medrano spent .5 hours preparing the documents necessary to dismiss the incorrect party, file the amended complaint, and re-serve the correct Defendants.  (ECF No. 23-3 at 4.)  He spent .3 hours drafting the proof of service and corresponding with the process server to serve the correct party (Defendant Kaur).  (ECF No. 23-3 at 4.)  Ms. Moore spent .5 hours reviewing the same.  (ECF No. 23-3 at 4.)  Finally, Mr. Medrano spent 1.8 hours preparing the documents necessary for entry of default against Defendants for failure to respond to the first amended complaint, subsequent notices to the parties, and communicating instructions to the process servers.  (ECF No. 23-3 at 4–5.)  Notably, this includes .5 hours purportedly spent seeking default against "Lalima Maharaj," an individual who is not currently, nor has never been, a party to this action.  (ECF No. 23-3 at 5.)  After this, Ms. Law spent .5 hours reviewing Mr. Medrano's work on the defaults and confirming their status and accuracy and Ms. Moore spent 1.2 hours doing the same.  (ECF No. 23-3 at 5.)

This Court finds it inherently unjust and unreasonable to require a party defendant, defaulting or otherwise, to pay for time spent by opposing counsel to (1) serve and seek default against incorrect parties, (2) conduct supplemental research to discover a mistake that perhaps

should have been caught during the initial approximately 5 hours spent purportedly researching and investigating Plaintiff's claims and identifying the proper parties, (3) dismiss the incorrectly named party, (4) file an amended complaint that is identical to the original, but for the new party defendant information, and (5) re-serve and re-enter default against parties previously defaulted, who would have only needed to be defaulted once, but for the mistake of Plaintiff's counsel. Nor should Defendants be billed for service on an individual who was never a party to this litigation. Furthermore, some of the paralegal time billed appears duplicative because there were three defendants in this action, or the billed entries pertained to clerical tasks, including the calendaring of deadlines, correspondence with process servers, drafting proof of service documents, and drafting letters of default. See Missouri v. Jenkins by Agyei, 491 U.S. 274, 288 n.10 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."). Accordingly, the Court shall reduce the aforementioned time billed by Ms. Moore and her staff relating to the multiple requests for default and the filing of the amended complaint to .3 hours attorney time and .5 hours paralegal time. In light of the foregoing, the Court finds this reduction to be imminently reasonable.

Next, the Court addresses the billing related to the instant motion. Mr. Medrano appears to have prepared the initial draft of this motion in its entirety. He bills 1.1 hours for the motion, including his two-page declaration and Ms. Moore's attorney declaration. (ECF No. 23-3 at 5–6.) Thereafter Ms. Law spends 1 hour reviewing the motion and drafting her own two-page declaration, and Ms. Moore spends 1 hour reviewing and finalizing the entire motion. (ECF No. 23-3 at 6.) The Court finds that aside from a few minor aspects of the declarations and the incorporation of the facts from paragraph 10 of the amended complaint into the motion, the filing and declarations appear almost entirely boilerplate and devoid of specific arguments or factual details pertaining to this case; that is, the motion for default judgment filed in this case is nearly identical to motions for default judgment filed by Ms. Moore in other actions before this Court. See, e.g., Trujillo v. La Valley Foods, Inc., 2017 WL 2992453 at *7. Therefore, the Court finds .5 hours attorney time and 1 hour paralegal time to be reasonable to complete drafting the motion before the Court, and reduces billings for the time expended on the motion for default judgment

1    accordingly.

2          Finally, the Court will not allow additional time spent attending the hearing on this

3    motion, as the Court has vacated the hearing on this motion and no appearances occurred.

4          Based on the foregoing, and to the extent the District Judge determines the motion for

5    default judgment should not be denied because service was proper, the Court will recommend

6    Plaintiff be awarded 1.3 hours of attorney time ($300 hourly rate), and 2.4 hours of paralegal time

7    (comprised of 1.1 hours for Ms. Law and 1.3 hours for Mr. Medrano at $115.00 hourly rate), for a

8    total reasonable fees amount of $666.00.

9          4.      Litigation Expenses and Costs

10         Both the ADA and Unruh Act authorize the award of costs for an action.  See 42 U.S.C. §

11   12205; Cal. Civ. Code § 52(a).  Plaintiff seeks a total of $772.20 in fees and costs: 402.00 for

12   filing fees, and $370.20 for service expenses.  (Moore Decl. ¶¶ 12–13; ECF No. 23-3 at 8–12.)

13   However, the Court is concerned by the fact that the process server billed $81.70 for service on

14   Defendant Dalvinder Shahi, but billed $139.20 for service on Defendant Kasmir Shahi, which

15   includes a higher fee due to "out of area service."  (ECF No. 23-3 at 8, 10.)  The reason this

16   billing is particularly troubling is because — as verified by the proofs of service — Dalvinder

17   Shahi and Kismir Shahi (husband and wife, respectively) live at the same address and were

18   served by the same process server at the exact same time.  (See ECF No. 5 at 2; ECF No. 6 at 2.)

19   Perhaps because the propriety of Ms. Moore's billing proffers is accepted without question by the

20   courts in these low-amount default ADA cases nearly as often as they challenged, Ms. Moore's

21   law firm has become disincentivized to appropriately view and challenge the billings of staff and

22   contracting services for accuracy.  This Court does not find that giving Ms. Moore carte blanche

23   to pass the buck onto defaulted defendants should extend to permitting unquestioned and

24   obviously inconsistent billing practices.  On this basis, the Court recommends Plaintiff be

25   awarded the reduced costs of $714.70, which includes the $402 filing fee, the $149.30 fee for

26   service on Defendant Kaur, and an equal service of $81.70 each for Defendants Dalvinder Shahi

27   and Kismir Shahi.

28   ///

31

**IV.**

**CONCLUSION AND ORDER**

The entry of default judgment is within the discretion of the Court.  See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  The Court finds service to be inadequate and recommends the motion for default judgment be denied without prejudice.  However, if the District Judge finds service to be adequate, the Court would then find the Eitel factors weigh in favor of granting default judgment as to Defendant Kaur only, and would recommend granting the motion for default judgment with a reduction in attorneys' fees as outlined below.

Accordingly, IT IS HEREBY ORDERED that the hearing on Plaintiff's motion for default judgment set for May 18, 2022, at 10:00 a.m. in Courtroom 9, is VACATED.

Furthermore, based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.      Plaintiff's motion for default judgment (ECF No. 23) be DENIED for inadequate service of the summons and complaint; or

2.      Alternatively, if the District Judge finds service adequate, the Court recommends Plaintiff's motion for default judgment be GRANTED IN PART and DENIED IN PART as follows:

   a.      Plaintiff's motion be GRANTED as the claims are asserted against Defendant Kaur;

   b.      Plaintiff's motion be DENIED as the claims are asserted against Defendants Dalvinder Shahi and Kasmir Shahi;

   c.      Defendant Kaur be found and declared to be in violation of Title III of the Americans with Disability Act and the California Unruh Civil Rights Act;

   d.      Defendant Kaur be ordered to make the following modifications to the facility known as Waterford Market, located at 12828 Yosemite Boulevard, Waterford, California 95386, such that each item is brought into compliance with the accessibility requirements of the Americans with Disabilities Act and the Americans with Disabilities Act Accessibility Guidelines (ADAAG), as follows:

32

           i.     Providing a level access aisle next to the designated accessible parking stall and an accessible route of travel from the designated accessible parking to the facility entrance in accordance with 2010 ADAAG Standards §§ 502.4 and 303, *et seq.*; and

           ii.    Providing a proper clear floor space in front of the transaction counter in accordance with 2010 ADAAG Standards §§ 904.4 and 305.2, *et seq.*; and

    e.    Default Judgment be ENTERED in favor of Plaintiff Darren Gilbert and against Defendant Nirmal Kaur, in the amount of $5,380.70, which consists of:

           i.     $4,000 in statutory damages under the Unruh Act;

           ii.    $666.00 in reduced attorney fees (attorneys' fees in the amount of $390.00 (1.3 hours at $300.00 per hour), and paralegal fees in the amount of $276.00 (2.4 hours at $115.00 per hour)); and

           iii.   $714.70 in costs.

3.    Plaintiff is HEREBY ORDERED to mail a copy of these findings and recommendations to each of the Defendants at that Defendant's last known address.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **fourteen (14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).

///

///

///

The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __May 17, 2022__

UNITED STATES MAGISTRATE JUDGE